UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Benjamin Villalpando,** )<br> )<br>     **Plaintiff,** )<br>vs. )<br> )<br>**A-1 OUTDOOR MAINTENANCE, INC.** )<br>d/b/a A-1 Landscaping., )<br>and )<br>**JEFF DADY** )<br>**Individually pursuant to** )<br>**FLSA and IMWL** )<br>**As an Employer** )<br> )<br>     **Defendants.** )<br> ) | **Case No. 21 CV 3940**<br><br>**Honorable** |

# COMPLAINT

NOW COMES before this Honorable court, Plaintiff, **Benjamin Villalpando** ("Plaintiff"), by his attorney THE LAW OFFICE OF JOHN IRELAND, for his Complaint against the Defendant **A-**1 OUTDOOR MAINTENANCE, INC. d/b/a A-1 Landscaping., (hereinafter referred to as "A-1") and Individual Defendant JEFF DADY, individually, as an Employer pursuant to the FLSA and IMWL**,** and alleges as follows:

## NATURE OF ACTION AND PARTIES

1. This civil action is brought by the above-named individual plaintiff who seeks redress for the Defendants' violations of his rights under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. and for violations of the Illinois Minimum Wage Act ("IMWA"), 820 ILCS §105 et seq..

2. Plaintiff was employed by the Defendants as a landscaper.

1

3. Plaintiff asserts that he was not paid sufficient wages to pay Plaintiff the minimum wage and/or overtime wages as required pursuant to the FLSA and/or IMWL; thus he is owed minimum and overtime wages.

4. Plaintiff worked hundreds/thousands of hours of overtime each year for each year Plaintiff worked for Defendants, yet Plaintiff was not paid $0.00-$60.00-$120.00 dollars per week for the 60-100 hours of work time Plaintiff worked each week.

5. Upon information and belief, A-1 OUTDOOR MAINTENANCE, INC. d/b/a A-1 Landscaping (hereinafter referred to as "A-1") is a private landscaping and lawn maintenance corporation with its operations in Aurora, Illinois.

6. JEFF DADY is an employer under the FLSA, and IMWL based on his role as President of the Defendant corporation, in that he had day-to-day control over all the company's operations including hiring and firing of employees, scheduling, and compensation of the employees including the Plaintiff. He was aware and knowledgeable of the hours Plaintiff was working, and that Plaintiff was not paid minimum wages and overtime wages.

## JURISDICTION AND VENUE

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, this case arising under the laws of the United States, 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce, and 28 U.S.C. § 1367. The Court has personal jurisdiction over Defendant pursuant to Federal Rule 4 (k)(1), in that Defendant has sufficient contact with the state of Illinois as it conducted business within the state. *See* 735 ILCS 5/2-209.

8. Defendant's operations exceed sales of $500,000.00.

9. Defendant, is an enterprise that regularly and recurrently have at least two employees engaged in commerce.

10. Courts have found this element satisfied where employees "merely handled supplies or equipment that originated out-of-state." **Rodriguez v. Almighty Cleaning, Inc**., 784 F.Supp.2d 114, 354*354 120 (E.D.N.Y.2011). Enterprise coverage "applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce." **Archie v. Grand Cent. P'ship,** 997 F.Supp. 504, 531-32 (S.D.N.Y.1998) (listing cases)).

11. Here Plaintiff used numerous items that moved in interstate commerce.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

13. Plaintiff also pleads individual FLSA Jurisdiction as he handled and used items that transported in commerce including fuel, oil, grease, machinery, hand tools and supplies for landscaping (including mulch, stones and soil).

**GENERAL ALLEGATIONS**

14. This lawsuit arises out of Defendants' practice of knowingly and willfully failing to pay minimum wages and overtime wages.

15. At all times relevant, Defendants classified Plaintiff as a non-exempt employee of the Defendants.

16. Plaintiff's non-exempt status is demonstrated by his receiving different amounts of wages for different amounts of hours of work. Plaintiff work hours varied each week and Plaintiff's wages likewise varied from week to week.

17. Plaintiff was employed by the Defendants from May 15, 2013 through June of 2021.

18. Plaintiff pleads his claims as follows:

   a. Under the FLSA for two years from filing to this Complaint
   b. Under the FLSA for three years as Defendants actions were willful.
   c. Under the IWML for three years as permitted by statute.
   d. For an extended period of time, based on tolling of the Plaintiff's claims as plead in detail herein.

19. At all times relevant, A-1 was an employer, as defined by the FLSA and Illinois law.

20. Defendant A-1 is engaged in interstate commerce as that term is used in the FLSA.

21. Defendant also qualifies under the IMWL as it employs more than four employees.

22. Plaintiff worked for Defendants as a landscaper, and yard maintenance worker.

23. In winter time Plaintiff continued to work for Defendants doing snow removal, snow plowing, maintenance and preparation of the vehicles for further snow removal.

24. In this role Plaintiff worked an extreme amount of hours each and every week.

25. Plaintiff worked from 60-100 hours per week each and every week for Defendants.

26. In winter time, when its snowed or ice formed on customers property, Plaintiff would work 20+ hours plowing and shoveling snow for Defendants in a single day, and work two to four days in row working 20 plus hours.

27. Defendants failed to maintain any time records for the Plaintiff work hours.

28. For each week of work, Plaintiff received a very small payment of wages, often the payment was only $100.00, but he also received $60 some weeks, and other weeks he received $80. On a very good week Plaintiff would receive $130-140 dollars. For some weeks Plaintiff would receive from Defendants no wages whatsoever.

29. Thus for weeks where Plaintiff worked 100 hours, and Plaintiff received just $100, Plaintiff was paid at just dollar ($1.00) per hour.

30. Plaintiff was paid in cash.

31. For each of the above payments Plaintiff received the small amount of wages in a cash payment, not by paycheck.

32. Plaintiff received just one paycheck in his entire working career with Defendants, check #54088. While this check lists other alleged payments, he did not receive those other paychecks.

33. It is possible that Defendants reported the cash payments and included those cash payments on paychecks Plaintiff did not receive.

34. Plaintiff was frequently asked to sign documents, but Plaintiff is unable to read well. Plaintiff signed based on Defendants threats or intimidations, and he never received any copies of said documents.

35. Some District Judge's require a specific overtime/minimum wage violation allegation, including a specific date, amount of hours, amount of wages paid, and estimate of owed wages, for this requirement, Plaintiff pleads the following specific allegation, however Plaintiff is NOT limiting his claims to only this specific allegation. This is provided as single example, and Plaintiff is not limiting his claims by this allegation, and brings claims for all periods to which he has a claim.

36. Plaintiff alleges that in the week of May 17, 2021 to May 23, 2021 Plaintiff worked Monday through Friday and worked 7:00 AM to 7:30PM each day of this example work week.

37. Thus for this example week of 5/17-5/23/21 Plaintiff worked approximately 62.5 work hours. For this week of work Plaintiff received just $60.00 cash payment.

38. Thus for the work week of May 17 to May 23 Plaintiff was paid 0.96 cents per hour.

39. For the week of May 17 to May 23 Plaintiff is owed, at minimum wages as follows:

    a. 40 hours x $7.25 (Fed rate)= $290.0

    b. 22.5 hours overtime x. $10.875 (Fed overtime) = $244.69

    c.  40 hours x $11.00 (Ill rate) = $440.00

    d.  22.5 x 16.5 = $371.25

40. Thus for this example week, pursuant to the IMWL, the Plaintiff is owed $440.00 + $371.25 = $811.25 - $60=$751.25

41. The above does not include the following remedies, liquidated damages, treble damages, 5% IMWL penalties, pre-judgement interest, fees, and costs.

## DEFENDANTS FAIL TO QUALIFY FOR HOUSING WAGE CREDIT

42. Defendants also will likely claim a housing wage credit, as Plaintiff was provided a house in which to live.

43. The house provided to Plaintiff by Defendants was located at 819 Oliver Avenue Aurora Illinois 60506.

44. The house was owned by another company, DDC investments LLC, and DDC Investments LLC is also owed (in whole or part) by the individual Defendant.

45. Defendants fail to qualify for the housing wage credit based on failures of Defendants to follow related housing wage regulations.

## DEFENDANTS FAIL TO QUALIFY FOR HOUSING CREDIT DUE TO LACK OF NOTICE TO PLAINTIFF

46. Defendants fail to qualify for the housing wage credit because Defendants did not provide notice to Plaintiff on Plaintiff's wage statements.

47. FLSA regulations require notice to the Plaintiff: Reasonable cost is not more than the actual cost and employers must "keep certain records of the cost incurred in furnishing board, lodging or other facilities" and "**showing additions or deductions from wages**

**paid for board, lodging** or other facilities on a work week basis" 29 C.F.R. § 531.3(c), (emphasis added).

48. Likewise under IDOL regulations wage credits/deductions require notice.

**Section 210.700  Contents of Records**

The following basic information must be contained in the records of the employers:

    h)     Basis on which wages are paid;

    i)     Additions and deductions from employee's wages for each pay period and an explanation of additions and deductions;

    j)     Type of payment (hourly rate, salary, commission, etc.), straight time and overtime pay and total wages paid each pay period; and

49. Thus as per regulations, notice of wage credits, deductions and costs for housing must be disclosed on Defendants' wage statements to Plaintiff, and here Defendants failed to provide that notice, thus should be found unable to take wage credit for that housing.

50. This notice is lacking as Plaintiff received a single pay check, #54088, which failed to disclose the alleged "housing credit" Defendants' likely will claim.

51. More pertinent, Plaintiff was paid $100.00 cash, and not provided any statement of wages at all, much less a statement of wage housing credits claimed by Defendants.

DEFENDANTS' FAIL TO QUALIFY FOR WAGE HOUSING CREDIT AS DEFENDANTS FAILED TO KEEP COMPLETE RECORDS OF THE COSTS OF THE HOUSING

52. Further Defendants failed to maintain proper and complete records of reasonable costs for the housing provided to the Plaintiff.

53. FLSA regulations require that "an employer who makes deductions from the wages of employees for `board, lodging, or other facilities' (as these terms are used in sec. 3(m) of the Act) furnished to them by the employer or by an affiliated person, or who furnishes

such "board, lodging, or other facilities" to employees as an addition to wages, shall maintain and preserve records substantiating the cost of furnishing each class of facility..." 29 C.F.R. 516.27(a).

54. Defendants have a duty to maintain complete and accurate records of the reasonable costs for the housing, and here Defendants failed to keep those records and/or keep them accurately and completely.

### IF NOTICE IS NOT REQUIRED, AND THE DEFENDANTS HAVE RECORDS OF ACTUAL COSTS, THE REASONABLE COSTS OF THE HOUSING IS NOT SUFFICIENT TO PAY MINIMUM WAGES AND OVERTIME WAGES DUE

55. In the alternative, even if Defendants receive some housing credit for the reasonable costs related to the housing provided to Plaintiff, the value of the housing is less than the wages owed to Plaintiff.

56. Illinois Department of Labor (IDOL) regulations require the following:

**Section 210.200  Meals and Lodging**

a)      The reasonable cost of meals and lodging furnished by the employer and actually used by the employee may be considered as part of the wage paid an employee only where customarily furnished to the employee.  The employee must receive the meals and/or lodgings for which he or she is charged, and it is also essential that his/her acceptance thereof be voluntary and uncoerced. It is not sufficient that the meals and/or lodgings be furnished by an employer to justify the charge.  It is necessary that the meals and/or lodgings are furnished regularly by the employer to his employees in the same or similar trade, business or enterprise in the same or similar communities.

57. Thus the "reasonable cost" of lodging is allowed as a wage credit, not the "value" of the housing or the lease price listed on a lease.

58. Here Defendants forced Plaintiff to sign a lease, however, as the value or the lease price is not the relevant amount for housing wage credits, the lease price is simply not relevant to Defendants claim of housing credit.

8

59. The FLSA has similar regulations under § 203(m) of the FLSA, the definition of wage "includes the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees..." 29 U.S.C. § 203(m).

60. Section 531.3 of the IWML's regulations provide general guidelines for the determination of "reasonable cost." Reasonable cost is "not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees."

61. Furthermore, "[r]easonable cost does not include a profit to the employer or to any affiliated person." 29 C.F.R. 531.3(b). The regulation also sets forth procedures for the determination of reasonable cost when, as here, there has been no determination by the administrator. 29 C.F.R. 531.3(c).

62. Here the lease price for the housing would not be allowed as a credit as it clearly includes profit for the employers.

63. The lease price is listed as $1,200 per month, or $400 per week.

64. The lease price far exceeds the actual costs of the housing

65. The actual costs of the housing are estimated to be a mere $150-200 per week for the mortgage, $20-40 per week for taxes and $15-25.00 per week for insurance. These are the only costs for the housing that are reasonable, other housing costs, such as utilities, were paid by Plaintiff.

66. Plaintiff paid all utilities, thus the only costs to Defendants were for the mortgage, insurance, and real estate taxes.

67. Thus adding the total estimated costs for mortgage, insurance and taxes equals approximately $200-$250.00 per week, far less than what Defendants are required to pay.

68. Applying this estimated costs to the example week, (May 17-23 see above), shows that Plaintiff is owed overtime and/or minimum wages, even if Defendants receive the disputed housing credit: $440.00 + $371.25 = $811.25 - $60=$751.25 - $200-250=$551.25 to 501.25 in owed wages after both the disputed housing credit and cash payment off set.

69. Even if Defendant received full credit for the entire lease payment to the example week, (May 17-23 see above), shows that Plaintiff is owed overtime and/or minimum wages, even if Defendants receive the housing credit: $440.00 + $371.25 = $811.25 - $60=$751.25 - $400 =$351.25 in owed wages after both the disputed housing credit and cash payment off set.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

70. Plaintiff re-alleges and incorporates by reference all the above allegations.

71. Under the FLSA, the Plaintiff was entitled to be paid overtime for all hours worked over 40 in a given work week.

72. The overtime rate is computed by multiplying 1.5 times an employee's regular hourly rate, which includes all nondiscretionary compensation paid to employees.

73. Defendants failed to compensate the Plaintiff at the overtime rate for work performed in excess of 40 hours per week in violation of the FLSA.

74. Defendants' violation of the FLSA for failure to pay the Plaintiff overtime wages was willful and deliberate.

75. Upon information and belief, Defendants practices as described above were not approved in writing by the United States Department of Labor.

76. Upon information and belief, Defendants practices were not based upon Defendants review of any policy or publication of the United States Department of Labor.

77. Due to Defendants' violation of the FLSA, the Plaintiff is entitled to recover from Defendants his unpaid compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY OVERTIME UNDER ILLINOIS MINIMUM WAGE ACT

78. Plaintiff repeats and re-alleges the above paragraphs.

79. Illinois law provides that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of forty per week. Illinois Minimum Wage Law, 820 ILCS §105/4a *et. seq.*

80. Defendants failed to pay the Plaintiff for overtime hours worked.

81. The foregoing actions of Defendants constitute violations of the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.* Defendants actions were willful and not in good faith.

82. Defendant is liable to the Plaintiff for actual damages, equitable relief, recovery of attorneys' fees and costs, and prejudgment interest as provided by law, pursuant to the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.*

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

a. Award all actual damages suffered by the Plaintiff;

b. Enter an order declaring that Defendants willfully violated the overtime provisions of the FLSA and the IMWA;

c. Award the Plaintiff damages in the amount of overtime wages required by the FLSA and the IMWA improperly denied him by Defendants actions;

d. Award the Plaintiff liquidated damages equal to Plaintiff's unpaid overtime compensation under the FLSA;

e. Award the Plaintiff punitive damages;

f. Award the Plaintiff prejudgment interest pursuant to the IMWA;

g. Award the Plaintiff post-judgment interest;

h. Award the Plaintiff reasonable attorneys' fees as well as the costs of this action;

i. Award such other and further relief as this Court deems necessary and proper, including but not limited to appropriate injunctive relief against any and all ongoing unlawful employment practices.

## THIRD CLAIM

### EQUITABLE TOLLING

83. Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

84. The applicable statute of limitations for Plaintiff's FLSA and IMWL causes of action should be tolled because strict application of the statute of limitations would be inequitable.

85. FLSA and IMWL regulations require that all employers display posters advising employees of their minimum wage and overtime pay rights. See. e.g.. 29 C.F.R. § 516.4.

86. An employer's failure to post required FLSA notices regarding minimum wage and

overtime provisions can toll the statute of limitations. United States v. Sabhnani. 566 F. Supp. 2d 139 (E.D.N.Y. 2008); Henchy v. City of Absecon. 148 F. Supp. 2d 435, 439 (D.N.J. 2001); Kamens v. Summit Stainless. Inc.. 586 F. Supp. 324, 328 (E.D. Penn. 1984).

87. Defendants failed to post any notice regarding the FLSA or IMWL**.**

105. Further, Defendants specifically instructed Plaintiff in error as to his wages, overtime, pay and hours.

106. As a result of Defendants assertions, Plaintiff had no basis for believing Defendants were in violation of the FLSA and IMWL.

107. Plaintiff did not have actual or constructive knowledge of his FLSA rights.

108. Thus Plaintiff pleads that his claims should be tolled for the period of time from when he began working, in 2013 until 2021.

Dated: July 25, 2021                                Respectfully submitted,

                                                            ____/S/John C. Ireland

                                                    John Ireland
THE LAW OFFICE OF JOHN C. IRELAND
636 Spruce Street
South Elgin, IL 60177
Telephone: (630) 464-9675
Facsimile 630-206-0889
attorneyireland@gmail.com